IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **MIDTEXAS INDUSTRIAL** | § | |
| **PROPERTIES, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:21-CV-2267-L** |
| | § | |
| **U.S. POLYCO, INC.,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Plaintiff's Motion for Summary Judgment (Doc. 29); Defendant's Motion for Summary Judgment (Doc. 31); and the parties' Motions to Exclude Testimony (Docs. 27, 35), all of which were filed on September 16, 2022. After considering the motions, briefs, evidence, pleadings, and applicable law, the court **grants** Defendant's Motion for Summary Judgment (Doc. 31); **denies** Plaintiff's Motion for Summary Judgment (Doc. 29); and **denies as moot** the Motions to Exclude Testimony (Docs. 27, 35).

### I. Factual and Procedural Background

MidTexas Industrial Properties, Inc. ("Plaintiff" or "MidTexas") brought this action on September 22, 2021, asserting causes of action against U.S. Polyco, Inc. ("Defendant" or "Polyco") for trespass and private nuisance under Texas law. Both of these claims are premised on Plaintiff's contention that Polyco has unlawfully refused and failed to remove its equipment ("Equipment") from commercial property ("Property" or "Premises") currently leased by MidTexas after being notified on September 27, 2019, that MidTexas no longer consented to Polyco's keeping the Equipment on the Property, and its continued presence on the Property after

**Memorandum Opinion and Order – Page 1**

that date was unauthorized.[1]  On November 15, 2021, MidTexas filed an Amended Complaint in which it added a request for a permanent injunction that would preclude Polyco from continuing to keep its Equipment on the Property.  In addition, it asserts in its Amended Complaint that Polyco is equitably estopped from asserting that its trespass and nuisance claims are barred by the applicable statute of limitations under Texas law.[2]  As a result of Polyco's continued presence on the Property, Plaintiff contends that it has lost $26,000 per month since October 1, 2019, in rental income.  Plaintiff asserts that, if Polyco does not remove the Equipment, it will have to incur the additional cost of removing the Equipment and restoring the Property.

The Property at issue is owned by Texas Properties Trust and was previously leased by Texas Central Business Lines Corporation ("TCB").  While this litigation concerns MidTexas and Polyco, it arises from and relates to a prior business deal between Polyco and TCB that resulted in a series of lawsuits.  This action is also related to a previous civil action, Case No. 3:19-CV-1573-L, involving MidTexas and Polyco that was assigned to the undersigned.  After the court denied MidTexas's motion for leave to amend its complaint to add a trespass claim against Polyco and entered judgment in favor of Polyco in the related case, MidTexas filed this lawsuit against Polyco.

TCB is a terminal and switching railroad that operates in Midlothian, Texas, that also provides transloading operations, which is the transfer of commodities from rail cars to trucks to

---

[1] Unless otherwise indicated, the facts referenced in the memorandum opinion and order are undisputed.

[2] Plaintiff did not expressly raise its equitable estoppel argument in response to Defendant's summary judgment motion, even though Defendant contends that any such estoppel argument by Plaintiff is insufficient to defeat its statute of limitations defense. *See* Def.'s Summ. J. Mot. 16.  Plaintiff asserts that "Polyco's acts and representations justifiably led MidTexas to believe Polyco was making arrangements to remove the Equipment." Pl.'s Resp. 4. This assertion, however, was made in response to Defendant's damages argument and was not adequately briefed or supported by citations to evidence.  Thus, Plaintiff waived or abandoned this issue and claim as it pertains to Defendant's statute of limitations defense. *See Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (concluding that the plaintiff's failure "to defend her retaliatory abandonment claim in both responses to the defendant's motion to dismiss" and "her failure to pursue this claim beyond her complaint constituted abandonment" of the claim) (citation omitted); *Kellam v. Servs.*, No. 12-352, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue."), *aff'd sub nom.*, *Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014) (citations omitted).

**Memorandum Opinion and Order – Page 2**

reach their destination. Polyco produces various blends of proprietary asphalt products that it sells to customers through the United States. Seeking to use TCB's transloading operations to increase capacity to bring in larger quantities of asphalt by rail to service its customers, Polyco entered into two agreements with TCB that provided for the construction of a plant or facility and infrastructure to support Polyco's business. These agreements also provided Polyco with a license to be on the Property.

The facility that was constructed under the agreements between Polyco and TCB includes, but is not limited to, twelve large tanks ranging in storage size, a metal building to house a lab and office, scales, meters, heaters, compressors, a rail pipe bridge, pipe racks, a truck canopy, and a heater canopy. Together, the facility and the component structures that make up the Equipment sit on concrete foundations on six to seven acres at the MidTexas International Auto Park in Midlothian, Texas. The Equipment cost approximately $9,000,000, with Polyco still owing more than $4,000,000. The facility was never opened or operated by Polyco because a conflict arose between it and TCB during the construction process, which resulted in a lawsuit being filed in Ellis County, Texas, on August 26, 2015. After filing the lawsuit against TCB, Polyco terminated its agreements with TCB on August 15, 2016.

On October 1, 2017, MidTexas took over the lease of the Property. Between April 2017 and November 2018, TCB, MidTexas, and Polyco attempted to negotiate a removal of the Equipment, but no agreement was reached. These negotiations were complicated by MidTexas's purchase of an assignment of rights of a guaranty purportedly owed by Polyco, who disputed the validity of the guaranty. MidTexas made Polyco's payment of the guaranty an element in the negotiations concerning removal of the Equipment and demanded that Polyco pay $499,494.21 to satisfy the alleged guaranty. The unresolved dispute over the guaranty led MidTexas to file related

Civil Case No. 3:19-CV-1573-L, against Polyco on June 28, 2019, for payment of the guaranty. The undersigned granted summary judgment in favor of Polyco in that case on March 30, 2021, based on its affirmative defense that the guaranty was not supported by consideration.

Shortly after filing the related lawsuit, MidTexas notified Polyco by letter dated September 27, 2019, that it would commence charging Polyco $26,000 per month starting on October 1, 2019, if Polyco did not remove its Equipment from the Property. Def.'s Summ. J. App. 12 (Doc. 34). MidTexas reminded Polyco that, although it was previously authorized under its agreements with TCB to keep its Equipment on the Property, it had been three years since Polyco terminated those agreements with TCP and continued to occupy the premises. *Id.*

MidTexas sent another letter to Polyco on October 24, 2019, reminding Polyco that, because the agreements with TCB were terminated on August 15, 2016, Polyco no longer had any right to remain on the Property and was required to remove its Equipment from the Property. *Id.* at 15-17. MidTexas noted that TCB and it had both attempted to facilitate the removal of Polyco's Equipment by drafting a removal agreement on April 14, 2017, that Polyco revised on December 15, 2017, and that MidTexas revised on November 30, 2018, but it had been approximately eleven months since that time without any communication from Polyco. MidTexas, therefore, reiterated in its October 24, 2019 letter, that the presence of Polyco's Equipment on the Property "is an unauthorized use of the Premises and continues to interfere with and constrain [MidTexas's] operations in The Auto Park and around the Premises." Def.'s Summ. J. App. 16.

In addition, MidTexas advised in the same letter as follows:

> Due to [Polyco's] continued and unauthorized use of the Premises, [MidTexas] demanded, by letter dated September 27, 2019, appropriate compensation for such unauthorized usage of the Premises, but offered to waive and forego such compensation for October and November if [Polyco] has signed an agreement by November 30, 2019 requiring the removal of the property within 90 days. . . .

> . . . .
>
> [Polyco] cannot ignore its responsibilities for removal of its property from the Premises on an open-ended basis. The Agreements call for the removal of such property. Even under common law principles, such unremoved property constitutes a trespass and is actionable. In addition to the interference with [MidTexas's] expected business, other complications are created by [Polyco's] refusal or delay in its removal operations. . . .
>
> Based upon the foregoing, I have revised the proposed Removal Agreement, reflecting revised terms consistent herewith and new dates for the removal process. That revised Removal Agreement is enclosed herewith. We need to have immediate negotiations between the parties so that it may be finally agreed to and [Polyco] can fulfill its removal obligations.

*Id.*

The parties' efforts to settle were unsuccessful, and MidTexas filed this action against Polyco on September 22, 2021. Both parties now seek summary judgment on Plaintiff's trespass and nuisance claims in this case. Defendant also moved for summary judgment on its statute of limitations defense to these claims. In addition, the parties filed motions to exclude the testimony or certain witnesses. For the reasons herein explained, the court determines that Defendant is entitled judgment as a matter of law on its statute of limitations affirmative defense. The court's analysis, therefore, focuses on this issue.

## II.    Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary

judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because [it] is the plaintiff or as a defendant [it] is asserting an affirmative defense, [it] must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search

of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III. Statute of Limitations

#### A. Polyco's Contentions

In its summary judgment motion, Polyco contends that, as early as 2017, MidTexas has consistently asserted that Polyco no longer had any right to be on the Property after August 15, 2016, the date Polyco terminated its agreements with MidTexas's predecessor TCB, because Polyco's right to use the Property pursuant to those agreements ceased upon termination of the agreements and expiration of Polyco's license under the agreements. Polyco, therefore, contends that Plaintiff's trespass and nuisance claims accrued for statute of limitations purposes on August 15, 2016. Alternatively, Polyco argues that the latest date the claims could have accrued is October 1, 2017, the date MidTexas took over the lease of the Property. Thus, Polyco argues that Plaintiff's claims are barred by Texas's two-year statute of limitations applicable to claims for trespass and nuisance because MidTexas did not file this lawsuit until September 27, 2019, more than two years after its claims accrued.

Polyco further argues that MidTexas's correspondence in the fall of 2019 does not support its contention that MidTexas previously consented to Polyco remaining on the Property and only

withdrew that consent in 2019. According to Polyco, MidTexas's correspondence in the fall of 2019, and MidTexas's motion to amend its pleadings in the prior related case, show that MidTexas "never consented to [Polyco's] extended occupancy" on the Property after the agreements with TCB were terminated in 2016. In addition, Polyco argues that any attempt by MidTexas to negotiate the removal of the Equipment between 2017 and 2018 did not toll its limitations deadline for filing this lawsuit.

### B. MidTexas's Response

Plaintiff clarifies that it is not making a tolling argument based on the letters or the parties' settlement negotiations. MidTexas, instead, contends that the letters it sent to Polyco in September and October 2019 show its trespass and nuisance claims did not accrue until October 2019, after: (1) it notified Polyco via letter on September 27, 2019, that the Equipment needed to be removed from the Property or Polyco would be charged a monthly fee to keep if it was not removed; and (2) it put Polyco on notice on October 24, 2019, by sending a second letter advising Polyco that it "considered the continued presence of the Equipment on the Property to be unauthorized and a trespass." Pl.'s Resp. 12. According to MidTexas, these letters evidence when it withdrew its consent for Polyco's Equipment remaining on the Property.

MidTexas, therefore, argues that Polyco's statute of limitations argument fails because its claims against Polyco did not accrue before it sent these letters in the fall of 2019. Based on the deposition testimony of Polyco's corporate representative, Plaintiff further asserts that Polyco similarly believed that it had MidTexas's consent to remain on the Property until it received the letter from MidTexas in October 2019, demanding that the Equipment be removed from the Property.

Plaintiff contends that, "[b]ecause entry without consent or authorization is an essential element of a trespass claim, there could be no trespass claim until that consent [i]s withdrawn. This is because an entry with consent [i]s not an injury to the possessory right until there is no consent." Pl.'s Resp. 12 (footnotes omitted). Plaintiff also notes that, in Texas, "[a] lawful entry on property may become a trespass if the invitee later uses the property outside the scope of the invitation or purpose for the entry." *Id.* at 12 n.18 (citing *United Food & Com. Workers Int'l Union v. Wal-Mart Stores, Inc.*, 430 S.W.3d 508, 512 (Tex. App.—Fort Worth 2014, no pet.)). Based on this reasoning, Plaintiff argues that there was no trespass or nuisance by Polyco until MidTexas demanded in September and October 2019 that Polyco remove its Equipment from the Property.

### C. Discussion

Trespass to real property occurs upon the "*wrongful* interference with the right of [another's] possession of real property." *The 46 Acre Stables, Inc. v. Housewright*, No. 05-96-00787-CV, 1999 WL 632264, at *1 (Tex. App.—Dallas Aug. 20, 1999, no pet.) (denying motion for summary judgment because evidence did not show that consent was withdrawn to use a roadway on the owners' property) (citing *Cargal v. Cargal*, 750 S.W.2d 382, 385 (Tex. App.—Fort Worth 1988, no writ); and *Pentagon Enters. v. Southwestern Bell Tel. Co.*, 540 S.W.2d 477, 478 (Tex. App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.)). "Every unauthorized entry is a trespass "even if no damage is done." *See Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 827 (Tex. 1997) "A nuisance is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities." *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 269 (Tex. 2004).

The statute of limitations for a trespass to land claim is two years. Tex. Civ. Prac. & Rem. Code § 16.003(a). "The limitations period for a private nuisance claim is two years." *Schneider*

*Nat'l Carriers, Inc.*, 147 S.W.3d at 270 (citing Tex. Civ. Prac. & Rem. Code § 16.003)). A cause of action accrues "when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). The date a cause of action for private nuisance accrues depends on whether the nuisance is permanent or temporary. *Gilbert Wheeler, Inc. v. Enbridge Pipelines (E. Tex.), L.P.*, 449 S.W.3d 474, 478 (Tex. 2014) (citing *Schneider Nat'l Carriers, Inc.*, 147 S.W.3d at 275).

Generally, whether a nuisance is considered permanent or temporary under Texas law turns on "whether a nuisance is constant, regular, and likely to continue or whether it is sporadic, uncertain, and likely to end." *Schneider Nat'l Carriers, Inc.*, 147 S.W.3d at 272. In *Schneider*, the Texas Supreme Court explained that "[a] permanent nuisance claim accrues when injury first occurs or is discovered; a temporary nuisance claim accrues anew upon each injury." *Id.* at 270 (footnote and citations omitted). Texas courts "define a permanent nuisance as one that involves 'an activity of such a character and existing under such circumstances that it will be presumed to continue indefinitely.' Thus, a nuisance is permanent if it is 'constant and continuous,' and if 'injury constantly and regularly recurs.'" *Id.* at 272 (footnote and citations omitted).

"Conversely, a nuisance is temporary if it is of limited duration[,] . . . if it is uncertain if any future injury will occur, or if future injury 'is liable to occur only at long intervals.'" *Id.* A nuisance is also considered temporary "if it is 'occasional, intermittent or recurrent,' or 'sporadic and contingent upon some irregular force such as rain.'" *Id.* While the Texas rule for classifying nuisance as permanent or temporary "can be plainly and simply stated," the court in *Schneider* recognized that "its application to the facts involved in each case has been a continuing problem." *Id.* at 273 (footnote and citation omitted).

**Memorandum Opinion and Order – Page 10**

"When a cause of action accrues is normally a question of law." *Exxon Corp.*, 348 S.W.3d at 202 (citations omitted); *Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998) ("[T]he commencement of [a] limitations period may be determined as a matter of law if reasonable minds could not differ about the conclusion to be drawn from the facts in the record.").

The parties dispute whether Plaintiff's injury is permanent or temporary for purposes of damages, but they do not address whether the nuisance that Plaintiff contends was created by Polyco's failure to remove its Equipment from the Property in the several years since the agreements with TCB terminated in 2016 is permanent or temporary for statute of limitations purposes. The difficulty in making such a determination in this case is that Plaintiff's nuisance claim is not a typical nuisance claim. In other words, Plaintiff does not allege that the construction of the facility and presence of the Equipment on the Property, which was originally authorized by the Polyco's agreements with TCB, has resulted in an unusual level of noise, odor, flooding, or other condition that substantially interferes with its the use and enjoyment of Property "by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities." *Schneider Nat'l Carriers, Inc.*, 147 S.W.3d at 269.

Rather, it is undisputed that the facility has never been operated, and there is no evidence to suggest that the facility or Equipment has deteriorated during the time that it has continuously remained on the Property since 2016. Plaintiff's nuisance claim is, instead, premised on the same facts and theory that form the basis for its trespass claim—that Polyco wrongfully interfered with its right of possession of the Property by failing to remove the Equipment after the agreements with TCB were terminated, and MidTexas withdrew its consent for Polyco to remain on the Property. Thus, it appears to the court that Plaintiff's nuisance claim is a trespass claim that was simply "repackaged" as a nuisance claim.

Regardless of whether the nuisance alleged by Plaintiff constitutes a temporary or permanent nuisance, the court determines that this claim is time-barred for the same reason that its private trespass claim is time-barred. Plaintiff's consent theory of accrual is unsubstantiated, as the 2019 letters relied on by both parties make unequivocally clear that neither MidTexas nor TCB consented to Polyco remaining on the Property after it "unilaterally terminated" its agreements with TCB on August 15, 2016. Def.'s Summ. J. App. 15; Pl.'s Summ. J. App. 99 (Doc. 32). Any contention by Plaintiff to the contrary directly contradicts its choice of language in the 2019 letters to Polyco.

If MidTexas or TCB initially consented to Polyco remaining on the Property after Polyco terminated the agreements with TCB, there would have been no need for MidTexas to emphasize that Polyco "unilaterally terminated" its agreements with TCB on August 15, 2016. *Id.* Likewise, there would have been no need for MidTexas to state that "[i]t has now been three (3) years since the termination of the Agreement[s] and [Polyco] is still occupying the Premises since it has not removed its equipment and other property from the Premises." Def.'s Summ. J. App. 12; Pl.'s Summ. J. App. 97. It is obvious from these statements that MidTexas (and TCB) were unhappy with Polyco, and the situation was not an amicable one after the agreements between Polyco and TCB fell apart in 2016.

Moreover, MidTexas makes clear in its October 2019 letter that any "usage rights and transloading rights [Polyco had] for the Premises ceased upon termination of the Agreements and [Polyco] had no further rights in and to the Premises." *Id.* MidTexas attempt to "walk back" this statement by asserting that:

> The fact a person does not have a legal right or interest in real property is not the same [as] having consent to be on the property. For example, a visitor to a person's house does not have a legal right or interest in the home but may have the homeowner's consent to be there. The visitor's presence in the home is not a

> trespass until the homeowner asks the visitor to leave, withdrawing the consent. At that point, the authorized entry onto the homeowner's property becomes unauthorized and a trespass.

Pl.'s Resp. 14. n.26. What Plaintiff asserts may be true in a vacuum; however, it is unpersuasive when read in the context of MidTexas's statement that Polyco's right to be on the Property ceased upon termination of the agreements in 2016. In addition to the language already noted, MidTexas states in very next paragraph of its October 2019 letter:

> [Polyco] was required to remove all of its property after the "termination or expiration of [Polyco's] right to use the [Premises]" pursuant to Section 9, Exhibit E of the Transload Agreement. Further, the Agreements required [Polyco] to comply with all rules of TCB and the owner of the TCB Transload Center. TCB and [MidTexas], as the current ground lessee of the TCB Transload Center, have tried to facilitate [Polyco's] removal of its property by preparing and presenting to [Polyco] numerous versions of an Agreement for Removal of Personal Property ("Removal Agreement"). TCB sent the first draft to [Polyco] on April 14, 2017; [Polyco] made revisions thereto on December 15, 2017. [MidTexas] sent the latest revisions to the Removal Agreement to [Polyco] on November 30, 2018. [MidTexas] has had no response to such draft, which means it has been approximately eleven months without any draft or comments from [Polyco]. It appears [Polyco] has intentionally delayed its removal obligations. The presence of [Polyco's] property is an unauthorized use of the Premises and continues to interfere with and constrain [MidTexas's] operations in The Auto Park and around the Premises. [MidTexas] has not consented to such extended occupancy of [Polyco's] personalty on the Premises; but just to be clear, [MidTexas] hereby demands removal of the [Polyco] personalty immediately.

Def.'s Summ. J. App. 15; Pl.'s Summ. J. App. 99.

According to this paragraph in MidTexas's October 2019 letter to Polyco: (1) Polyco was "*required*" to remove *all of its Equipment* after the Agreements with TCB terminated in 2016; (2) together TCB and MidTexas prepared and presented to Polyco "*numerous versions*" of an agreement to facilitate the removal of the Equipment, starting on April 14, 2017, and continuing through November 30, 2018, one to two years before MidTexas sent the subsequent letters to Polyco in the fall of 2019; (3) MidTexas was unhappy when Polyco stopped negotiating and communicating for a period of approximately eleven months and believed that Polyco "ha[d]

intentionally *delayed its removal obligations*"; that Polyco's "unauthorized use" of the Property "*continues* to interfere with and constrain [MidTexas's] operations on the Property; and (4) MidTexas had "not consented to such *extended occupancy*" by Polyco on the Property. *Id.* (emphasis added). MidTexas's choice of words in this paragraph does not suggest, as MidTexas contends, that MidTexas or TCB had previously consented to Polyco's presence on the Property after the agreements with TCB were terminated, or that MidTexas was notifying Polyco for the first time that it no longer consented to Polyco's Equipment remaining on the Property. This paragraph in MidTexas's October 2019 letter, especially when read in conjunction with MidTexas's September 2019 letter, demonstrates the exact opposite—that MidTexas (and TCB) believed that Polyco had no right to remain on the Property after terminating the Agreements with TCB on August 15, 2016, and that Polyco's continued presence on the Property in the three years after termination of the agreements was unauthorized.

As indicated, Plaintiff points to the deposition testimony of Polyco's corporate representative to support its assertion that Polyco believed it had consent to be on the Property until it received MidTexas's October 2019 letter. Any belief by Polyco in this regard, however, is irrelevant in determining the date on which Plaintiff's trespass and nuisance claims accrued, and Plaintiff does not cite to any other evidence to support its assertion that MidTexas and TCB consented to Polyco's Equipment remaining on the Property until the fall of 2019 when MidTexas contends that consent was withdrawn. Additionally, MidTexas's letters make clear, even if MidTexas or TCB had previously consented to Polyco's temporary presence on the Property, any such consent was revoked *long before* MidTexas sent the letters to Polyco in the fall of 2019.

This conclusion is also consistent with the motion for leave (Doc. 19) that Plaintiff filed in the prior related Case No. 3:19-CV-1573-L, to amend its pleadings to add a trespass claim against

Polyco. Def.'s Summ. J. App. 94. Specifically, Plaintiff asserted in that motion that TCB's license to use the Property expired upon termination of the agreements with TCB, *id*.; that MidTexas began negotiating with Polyco at an unspecified time regarding the removal of the Equipment, *id*.; and it was only after those efforts failed because Polyco had "purposely delayed and at times, failed to engage," *id*., that MidTexas resorted to subsequently sending the letters in the fall of 2019 "with regard to Polyco's failure to remove the Polyco Personal Property from the Premises." *Id*. at 97.

Even viewing the evidence in the light most favorable to Plaintiff, "reasonable minds could not differ about the conclusion to be drawn from the facts in the record." *Childs*, 974 S.W.2d at 44. In summary, the evidence shows that Polyco's was no longer authorized to keep its Equipment on the Property after August 15, 2016, and, when Polyco failed to remove its Equipment in accordance with the former TCB agreements, MidTexas and TCB actively undertook efforts to remove Polyco from the Property between April 2017 and November 2018. When those efforts and subsequent attempts at settlement failed, MidTexas reminded Polyco in the fall of 2019 of its obligation under the former TCB agreements to remove its Equipment from the Property. MidTexas also advised that it had "not consented to such *extended occupancy*" by Polyco on the Property, and its *continued unauthorized* presence of the Property and *repeated delays* since 2016 in removing its Equipment constituted an unlawful and actionable trespass.

The court, therefore, agrees with Defendant that Plaintiff's trespass and nuisance claims accrued on August 15, 2016, the date that Polyco's authority to remain on the Property ceased upon termination of the agreements with TCB. Alternatively, at the latest, the claims accrued on October 1, 2017, when MidTexas assumed the lease of the Property, and joined TCB's efforts shortly thereafter to get Polyco to remove its Equipment from the Property. Because Plaintiff did

not file this lawsuit until approximately four to five years after these dates, its causes of action for private trespass and nuisance are barred by Texas's two-year limitations period. Accordingly, there is no genuine dispute of material fact regarding the applicability of the statute of limitations and when Plaintiff's claims accrued. Defendant is, therefore, entitled to judgment as a matter of law on its statute of limitations defense.

In light of the court's determination that Polyco is entitled to judgment as a matter of law on its statute of limitations affirmative defense, it need not address the parties' remaining summary judgment arguments. Further, because the court has determined that Plaintiff's trespass and nuisance claims are time-barred, it will deny Plaintiff's request for summary judgment on these claims, as any other ruling would be inconsistent with the rulings already made. The court's determination regarding Polyco's summary judgment motion also moots the parties' Motions to Exclude Testimony, which will be denied as moot.

## IV.    Conclusion

For the reasons explained, Polyco is entitled to judgment as a matter of law on its statute of limitations defense to Plaintiff's trespass and nuisance claims. Accordingly, the court **grants** Defendant's Motion for Summary Judgment (Doc. 31) on this ground; **denies** Plaintiff's Motion for Summary Judgment (Doc. 29); **denies as moot** the parties' Motions to Exclude Testimony (Docs. 27, 35); and **dismisses with prejudice** Plaintiff's trespass and nuisance claims. The dismissal of Plaintiff's only claims for trespass and nuisance also moots its request for a permanent injunction against Polyco, which is **denied as moot**. In accordance with Rule 58 of the Federal Rules of Civil Procedure, judgment will issue by separate document.

**It is so ordered** this 30th day of September, 2023.

Sam A. Lindsay
United States District Judge